UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS WEST, <br><br> Plaintiff, <br><br> v. <br><br> NNIT, Inc., <br><br> Defendant. | Civil Action No. 24-38 (RK) (JBD) <br><br> **MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court on a "Motion to Dismiss Plaintiff's NJLAD Claims under FRCP 12(b)(6) and to Transfer Venue under 28 U.S.C. [§]1404(a)" filed by Defendant NNIT, Inc. ("Defendant" or "NNIT"). ("Mot.," ECF No. 15-1.) Plaintiff Thomas West ("Plaintiff") opposed, ("Opp.," ECF No. 16), and Defendant replied, ("Reply," ECF No. 17). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion to Transfer Venue is **GRANTED**, Plaintiff's Complaint shall be transferred to the United States District Court for the Southern District of Georgia,[1] and Defendant's Motion to Dismiss is **DENIED**.

---

[1] Although Defendant's motion requested transfer to the *Northern* District of Georgia, (*see generally* Mot.), Defendant clarified this was an inadvertent clerical error, (Reply at 1 n.1 ("Defendant inadvertently referenced the Northern District of Georgia in its moving papers when it should have referenced the Southern District of Georgia.")). Thus, the Court will treat Defendant's motion as requesting transfer to the *Southern* District of Georgia, where Plaintiff resides. (ECF No. 17 at 1.)

I.      **BACKGROUND**[2]

Plaintiff brings this action against NNIT, his former employer, alleging unlawful discrimination and retaliation in violation of (1) the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-12(a), (d); (2) the American with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12111 *et seq.*; and (3) the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* (Compl. at 1.) Plaintiff resides in Augusta, Georgia and worked remotely as an IT Quality Assurance Agent for Defendant from November 22, 2021 through his termination on March 10, 2023. (*Id.* ¶¶ 10, 28.) Plaintiff does not contest the following: Defendant is an IT support company providing services to life sciences companies internationally and to the public and enterprise sectors in Denmark. ("Cathart Decl. ISO Mot.," ECF No. 15-3 ¶ 2.) Defendant is a Delaware corporation wholly owned by NNIT A/S, a Danish corporation headquartered in Denmark. (*Id.* ¶ 4.) Defendant's only physical office location is in New Jersey. (*Id.* ¶ 6; *see also* Opp. at 1.) The office is a rented, co-working space that "serves primarily as a location for mail to be delivered, physical items for the business to be stored, and accounting to operate from as needed." (*Id.* ¶ 6.) At all relevant times, Defendant did not have any employees reporting to this office on a daily basis. (*Id.* ¶ 7.) Nearly all of Defendant's employees work remotely.[3] (*Id.* ¶ 5; *see also* Opp. at 1, 5.)

In the fall of 2022, Plaintiff worked on a large project that led to an increase in his stress. (Compl. ¶ 11.) On or around December 9, 2022, Plaintiff experienced symptoms of what he believed to be a heart attack and was taken to the hospital where he was diagnosed with a panic

---

[2] For the purposes of Defendant's Motion to Dismiss under Rule 12(b)(6), the Court takes all facts as alleged by the Plaintiff in the Complaint as true. Where the Court includes facts outside the Complaint for its analysis in relation to Defendant's Motion to Transfer Venue, it will indicate as such.

[3] All facts related to Defendant's registration and business structure are for the purposes of the Court's Motion to Transfer analysis only.

attack. (*Id.* ¶¶ 12–13.) Plaintiff returned to work that day. (*Id.* ¶ 14.) On or around December 13, 2022, Plaintiff's doctor recommended he take mental health leave from work based on Plaintiff's stress levels. (*Id.* ¶¶ 15–16.)

That day, Plaintiff reached out to Julie Hankins ("Ms. Hankins"), Defendant's "employee and HR representative."[4] (*Id.* ¶ 17.) Plaintiff alleges Ms. Hankins suggested Plaintiff take **a** short term disability leave, which would afford him two months off from work, but did not provide him with any paperwork to complete for medical leave. (*Id.* ¶¶ 18–19.) According to Plaintiff, "Ms. Hankins acted as if she would handle everything for [Plaintiff] because of [Plaintiff's] mental and physical condition." (*Id.* ¶ 20.) Ms. Hankins then informed Plaintiff that she would "use his vacation time to cover his leave until the end of the 2022 year." (*Id.* ¶ 21.)

However, on or around December 29, 2022, Defendant's employee human resources platform informed Plaintiff that his leave to that point had not been covered by either FMLA or short-term disability. (*Id.* ¶ 22.) On or around January 20, 2023, Plaintiff's doctor submitted Plaintiff's medical records to Defendant. (*Id.* ¶ 23.) Ten days later, Defendant approved Plaintiff's FMLA leave through March 10, 2023, which was confirmed in a letter and an email. (*Id.* ¶ 24.) Approximately two weeks later, Ms. Hankins called Plaintiff and informed him that Defendant had decided to eliminate Plaintiff's position. (*Id.* ¶ 25.) When Plaintiff explained that he was on medical leave, Defendant reinstated him to his position. (*Id.* ¶¶ 26–27.) Thereafter, on March 10, 2023, the last day of Plaintiff's medical leave, he was informed again that Defendant was terminating his employment. (*Id.* ¶ 28.)

---

[4] For the purposes of the Court's Motion to Transfer analysis, the Court notes that Defendant avers that Ms. Hankins is its former "Head of People – Region US" and at all relevant times, worked remotely from her home in Florida. (Mot. at 2, 6 (citing Walsh Decl., Ex. A at ¶¶ 17–28).)

Plaintiff alleges that he "requested a reasonable accommodation of his disabilities under the ADA and NJLAD . . . [s]pecifically, Plaintiff requested medical leave from work," (*id.* ¶¶ 29–30), and then was treated less favorably than other employees without disabilities in the terms and conditions of his employment, (*id.* ¶ 33). Specifically, Plaintiff alleges he was terminated "because he had a record of a disability and/or because Defendant regarded hm as disabled and/or because he engaged in protective activity," and that but for his "disability status and/or request for a reasonable accommodation," Plaintiff would not have suffered termination. (*Id.* ¶¶ 31–32.)

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 11, 2023, and the EEOC issued its Notice of Right to Sue on August 21, 2023. (*Id.* ¶ 1.) Plaintiff timely filed this action on November 9, 2023 within 90 days of receipt of the EEOC's Right to Sue letter in the Superior Court of New Jersey, Law Division, Middlesex County, bearing Docket No. MID-L-006340-23. (*Id.* ¶ 2; ECF No. 1.)

Plaintiff's Complaint asserts seven counts against Defendant, alleging that Defendant: (1) failed to reasonably accommodate Plaintiff's disability by denying him requested medical leave in violation of N.J.S.A. 10:5-12(a); (2) violated the NJLAD anti-reprisal provisions in N.J.S.A. 10:15-12(d); (3) discriminated against Plaintiff on account of his disability by terminating his employment twice while he was on medical leave, violating N.J.S.A. 10:5-12(a); (4) discriminated against Plaintiff in violation of the ADA by terminating Plaintiff's employment because of his disability, treating other employees outside Plaintiff's protected class differently, and subjecting Plaintiff to different terms and conditions of employment; (5) retaliated against Plaintiff in violation of the ADA; (6) interfered with Plaintiff's right to medical leave and other protections under FMLA, 29 U.S.C. § 2601, *et seq.*; and (7) retaliated against Plaintiff for attempting to exercise his rights under the FMLA in violation of 29 U.S.C. § 2615(a). Defendant removed the

case to the District of New Jersey on January 4, 2024 on the basis of federal question jurisdiction and supplemental jurisdiction under 28 U.S.C. §§ 1331, 1367, 1441, and 1446. (*Id.*) On April 30, 2024, Defendant filed the instant motion to transfer and to dismiss the NJLAD claims, Plaintiff opposed, and Defendant replied. (ECF Nos. 15, 16, 17.)

## II.   LEGAL STANDARD

### A.   Rule 12(b)(6)

Under Federal Rule of Civil Procedure (12)(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 406 (D.N.J. 2018). "A pleading that offers labels and conclusions or a formulistic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

### B.   28 U.S.C. § 1404(a)

"Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to another district where the case might have been brought, or to which the parties have consented, for the convenience of the parties and witnesses and in the interest of justice." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018). The party moving to transfer "bears the burden of persuasion." *Id.* "Factors the court must consider include the three enumerated under the

statute—convenience of the parties, convenience of the witnesses, and the interests of justice—along with all other relevant private and public factors." *Id.* (citing *Atlantic Marine Constr. Co. v. U.S. District* Court, 571 U.S. 49, 62 n.6 (2013)).

Private factors for the Court to consider include: the "plaintiff's forum preference as manifested in the original choice"; "the defendant's preference"; "whether the claim arose elsewhere"; "the convenience of the parties as indicated by their relative physical and financial condition"; "the convenience of the witnesses"; and "the location of books and records," as well as "all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 (3d Cir. 2017) (citations omitted). The public factors include: "the enforceability of the judgment"; "the relative administrative difficulty in the two fora resulting from court congestion"; "the local interest in deciding local controversies at home"; "the public policies of the fora"; and "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citation omitted). A court must decide, "on balance, whether the litigation would 'more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *In re McGraw-Hill*, 909 F.3d at 57 (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)).

"Though *Jumara* provided these factors to assess the appropriateness of transfer, 'there is no definitive formula or list of the factors to consider.'" *Deibler, et al*, 2023 WL 6058866, at *3 (*quoting Eagle View Techs., Inc. v. GAF Materials*, LLC, 594 F. Supp. 3d 613, 619 (D.N.J. Mar. 28, 2022)). A decision to transfer a case pursuant to Section 1404(a) is within the sound discretion of the district court. *Lafferty v. Gito St. Riel*, 495 F.3d 72 (3d Cir. 2007) ("Section 1404(a) transfers are discretionary determinations made for the convenience of the parties."); *Sidari v. Caesar's Pocono Resorts*, 29 F. App'x 845, 847 (3d Cir. 2002) ("Transfer decisions fall to the discretion of

the District Court."); *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1045 (3d Cir. 1973) (district courts have "large discretion" in evaluating transfer).

### III. DISCUSSION

As noted above, Defendant has moved to (1) dismiss Plaintiff's NJLAD claims under Rule 12(b)(6) for failure to state a claim and (2) transfer this case to the Southern District of Georgia, where Plaintiff resides. (Mot. at 2–3.) The Court addresses each motion in turn.

#### A. Motion to Dismiss NJLAD Claims

Defendant moves to dismiss Counts 1, 2, and 3 of the Complaint ("the NJLAD claims"). Defendant argues dismissal is proper because "it is well established that the NJLAD does not extend to employment outside of New Jersey" and Plaintiff was at all relevant times a resident of Georgia who worked remotely. (Mot. at 17.) Plaintiff counters that recent New Jersey state court precedent—and following decisions from district courts in New Jersey—preclude dismissal of Plaintiff's NJLAD claims at this inchoate stage of the proceedings. (Opp. at 8-28.) The Court agrees.

The NJLAD is "intended to protect 'the civil rights of individual aggrieved employees'" and "'the public's strong interest in a discrimination-free workplace.'" *Meade v. Twp. of Livingston*, 265 A.3d 148, 159 (N.J. 2021) (quoting *Rios v. Meda Pharm., Inc.*, 252 A.3d 982, 986 (N.J. 2021)). The NJLAD makes it illegal for an employer to, *inter alia*, "bar or to discharge . . . from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.J.S.A. 10:5-12(a) Plaintiff argues that courts in New Jersey have found that the NJLAD can, under certain circumstances, apply to employees who work remotely outside of New Jersey, particularly when working remotely for New Jersey-based employers. (Opp. at 1). Plaintiff chiefly relies on district and state

7

precedent arising from the New Jersey Appellate Division decision in *Calabotta v. Phibro Animal Health Corporation.* 460 N.J. Super. 38, 64 (App. Div. 2019). The *Calabotta* court found that the New Jersey legislature did not intend to "protect only New Jersey residents" and further did not "inten[d] to limit the statute's protections . . . to those employees who perform all of their employment functions in New Jersey." *Calabotta*, 460 N.J. Super. at 64. Further, the court emphasized that the "NJLAD must be construed liberally toward its overarching goal of eradicating discrimination." *Id.* (collecting cases). As a result, the *Calabotta* court found it was a fact-sensitive inquiry as to whether the NJLAD applied to a non-New Jersey resident who was discharged from a New Jersey employer for whom he worked remotely. *Id.* at 73 (remanding for further factual development on the basis it was not clear if New Jersey law applied but noting "if plaintiff can establish that the company's decision to fire him was made or centered in New Jersey, that would be a counterweight on the New Jersey side of the scale" and "[m]any other facts and factors may also bear upon the calculus").

Federal courts have relied on the *Calabotta* framework in determining whether the NJLAD applies to plaintiffs working remotely outside the state. *See Chinchilla v. Geodis Am., Inc.*, No. 23-1995, 2024 WL 943424, at *6 (D.N.J. Mar. 5, 2024) (characterizing the *Calabotta* decision as "offer[ing] clarity" in its holding "that an out-of-state plaintiff may be entitled to assert a claim under NJLAD" and "evaluat[ing] whether [Plaintiff] has asserted sufficient factual allegations in the Complaint to adequately allege" an NJLAD claim); *Schulman v. Zoetis, Inc.*, 684 F. Supp. 3d 275, 278 (D.N.J. 2023) (denying defendant's motion to dismiss a remote worker's NJLAD claim based, *inter alia*, on the *Calabotta* decision and "predict[ing] that the New Jersey Supreme Court, when confronted with the question, will hold that [NJLAD] can reach a remote worker who worked for a New Jersey-based company, but physically outside of New Jersey"); *see also Herrera v.*

8

*Goya Foods, Inc.*, No. 21-11628, 2022 WL 16949129, at *6 (D.N.J. Nov. 14, 2022) (granting a Connecticut plaintiff's motion for leave to amend a complaint to add NJLAD violations relying on the *Calabotta* framework); *Cf. Donovan v. W. R. Berkley Corp.*, 566 F. Supp. 3d 224, 231 (D.N.J. 2021) (dismissing plaintiff's claims with leave to amend after applying the *Calabotta* framework and finding plaintiff had not sufficiently alleged a connection to New Jersey).

Moreover, the Third Circuit has counseled that an NJLAD claim should survive a motion to dismiss as long as the plaintiff pleads "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" of a *prima facie* discrimination claim. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016); *see also Cotto v. Ardagh Glass Packing, Inc.*, No. 18-1037, 2018 WL 3814278, at *3 (D.N.J. Aug. 10, 2018 (it is sufficient under the NJLAD for a plaintiff to allege "facts that *could* sustain a *prima facie* case in discovery" (emphasis added).)

Against this backdrop, while Plaintiff's Complaint only contains bare-bones allegations with a connection to New Jersey that appears tenuous, the Court finds that Plaintiff has likely alleged facts that *could* sustain *prima facie* NJLAD claims following discovery. More importantly, the *Calabotta* line of cases counsels that the viability of Plaintiff's NJLAD claims relies on fact-sensitive questions that are best determined through discovery, and more appropriately adjudicated at either the summary judgment or trial phase of proceedings. Here, discovery may reveal the extent of Defendant's relationship to New Jersey and whether decisions related to Plaintiff's employment were made in New Jersey. *See Walters v. Safelite Fulfillment, Inc.*, No. 18-11111, 2021 WL 1712261, at *7 (D.N.J. Apr. 30, 2021), *aff'd*, No. 21-2054, 2022 WL 15377887 (3d Cir. Oct. 27, 2022) (determining whether NJLAD applied to a remote worker at the summary judgment phase); *Moore v. Effectual Inc.*, No. 23-05210, 2024 WL 1091689, at *6 (W.D. Wash. Mar. 13,

2024) (same); *cf. Beam v. Johnson & Johnson*, No. 20-19217, 2023 WL 5207832, at *4 (D.N.J. Aug. 14, 2023) (dismissing an NJLAD claim brought by a Kentucky-resident employee working for an Ohio-based employer). The Court therefore **DENIES** Defendant's motion to dismiss Plaintiff's NJLAD claims on the grounds that Defendant's arguments are premature.

### B. Motion to Transfer

Defendant also seeks to transfer this case to the United States District Court for the Southern District of Georgia. (Mot. at 6–7.) Defendant contends that "all of the alleged acts and/or omissions giving rise to Plaintiff's claims occurred in the State of Georgia, and Georgia is the state with the most contacts," so accordingly "this matter could have been and should have been initiated in Georgia in the first instance." (*Id.* at 7–8.) Importantly, Plaintiff resides in the Southern District of Georgia and worked remotely from the district during the entirety of his employment with NNIT, never visited New Jersey in the context of his employment, and did not report to any employees located in New Jersey.[5] (*Id.* at 1, 6; *see also* West Decl. ISO Opp. ¶ 16 ("I performed all my work for NNIT from the areas where I lived, in the vicinity of Augusta, Georgia."), ¶ 15 (explaining that his direct supervisor lived and worked in Pennsylvania).) Moreover, the doctor who treated Plaintiff and completed and submitted Plaintiff's medical leave documentation to NNIT is located in the Southern District of Georgia. (Mot. At 6.) Defendant also contends the private and public interest factors favor transfer. (*Id.* at 8.)

---

[5] As the Court noted above, this office serves primarily as a location for mail to be delivered and physical items to be stored. (Cathart Decl. ISO Mot. ¶ 6; Mot. at 3.) Although it is not entirely clear to the Court what Defendant means by this, Defendant indicates that the office also serves as a location for "accounting to operate from as needed." (Cathart Decl. ISO Mot. ¶ 6; Mot. at 3.)

Plaintiff counters that this action should remain in New Jersey as Defendant's only office location in the United States is in New Jersey.[6] (Opp. at 28.) According to Plaintiff, Defendant has not shown that this matter could have been brought in the Southern District of Georgia because it does not "reside" in Georgia as it has no registered agents in Georgia and is not registered to do business in the state. (*Id.* at 29.) Plaintiff also maintains the public and private factors do not favor transfer, particularly because the court in the District of New Jersey is "much more likely to be familiar with the complexities of the [NJLAD]." (*Id.* at 32 (citing *Bensalem Lodging Assocs., LLC v. Holiday Hosp. Franchising, LLC*, 575 F. Supp. 3d 532, 541 (E.D. Pa. 2021)).)

As a threshold matter, the Court finds this case meets the criteria of a civil action that "might have been brought" in the Southern District of Georgia. Under 28 U.S.C. § 1391(b) a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."[7] 28 U.S.C. § 1391. Defendant has sufficiently demonstrated that the balance of events giving rise to this claim took place in Augusta, Georgia where Plaintiff resides, worked, and met with his doctor with respect to the medical leave at issue in this case. (Mot. at 6–8; Reply at 13.) Indeed, Plaintiff does not meaningfully dispute Defendant's

---

[6] Plaintiff also alleges Defendant used a New Jersey address on his paystubs and in the email signature of its employees, and that the EEOC investigation identified Ms. Hankins using a New Jersey office address. (Opp. at 8, 28.)

[7] Although neither party addresses the issue of personal jurisdiction, the Court notes that the Southern District of Georgia can exert jurisdiction over Plaintiff, who is undisputedly a resident of the district. (ECF No. 1.) Defendant, for its part, consented to personal jurisdiction in the Southern District of Georgia by filing the instant motion to transfer this case there. *See Groeneveld v. Verb Techonology Co., Inc.*, No. 23-03766, 2024 WL 1253296, at *6 (D.N.J. Mar. 25, 2024) (citing *Grande v. Knauf Gips KG & Knauf New Bldg. Sys. (Tianjin) Co.*, Civ. No. 21-3287, 2022 WL 5434325, at *3 (S.D. Tex. June 23, 2022) ("The parties consented to the transfer and therefore to this Court's exercise of jurisdiction over them.")); *see also Real Est. Sols. Today LLC. v. Scifo*, Civ. No. 20-4512, 2021 WL 486896, at *7 n.6 (D.N.J. Feb. 10, 2021) ("[P]ersonal jurisdiction is waivable, and based on Defendants' motion, in the alternative, to transfer this action, . . . it is apparent that [Defendant] consents to the exercise of personal jurisdiction over him in [the transferee state].")

characterization of where the salient events in question took place. (Opp. at 30.)[8] Accordingly, the Court turns to whether the public and private factors weigh in favor of transferring this action.

1. *Private and Public Interest Factors*

Generally, the public and private interest factors in this case are either neutral or weigh in favor of transfer.[9] First, "[a] plaintiff's choice of forum is generally given great weight." *Bakali v. Jones*, No. 17-2414, 2017 WL 3877854, at *1 (D.N.J. Sept. 5, 2017). While a plaintiff's choice of forum is "presumptively correct . . . [t]he choice of forum by a plaintiff is simply a preference; it is not a right." *Prime Hookah, Inc. v. MK Distribs., Inc.*, No. 19-7283, 2020 WL 563524, at *3 (D.N.J. Feb. 5, 2020) (alteration in original) (internal citation and quotations omitted). However, the plaintiff's choice of forum is not dispositive and may be displaced by other factors, particularly when the plaintiff's selected forum is not his home forum. *See LG Elecs. Inc. v. First Int'l Computer*, 138 F. Supp. 2d 574, 589 (D.N.J. 2001) (citing *NCR Credit Corp. v. Ye Seekers Horizon*, 17 F. Supp. 2d 317, 321 (D.N.J. 1998)).[10]

---

[8] Plaintiff's argument that Defendant has not met the requirements of 28 U.S.C. § 1391(b) is grounded in Defendant's clearly inadvertent identification of the *Northern* District of Georgia, rather than the *Southern* District of Georgia, as the proper venue, and does not address the impact of Plaintiff's residence in the Southern District of Georgia. (Opp. at 30.) Plaintiff was on notice that Defendant intended to transfer the case to Plaintiff's district of residence, as Defendant's pleading clearly stated it intended to transfer the case to the district in which Augusta, Georgia is located as all of the alleged acts and/or omissions giving rise to Plaintiff's claims occurred there. (Mot. at 7; *see also* ECF No. 5 at 1.)

[9] The enforceability of the judgment is neutral, and thus, this Opinion does not substantively address this factor. *See Interlink Prod. Int'l, Inc. v. Crowfoot*, No. 20-10566, 2020 WL 6707946, at *8 (D.N.J. Nov. 16, 2020) ("[W]hen both forums are federal district courts, this factor has little relevance because it is unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by one federal forum or the other.")

[10] As to Defendant's forum preference, Plaintiff argues that Defendant's preference for the Southern District of Georgia should not be given weight because, upon beginning his employment, Defendant required Plaintiff to sign a "Non-Compete, Confidentiality and Employee Invention Agreement," (the "Agreement") which contained a choice of law and forum selection clause, providing that the Agreement should be governed by New Jersey law and that all "suits, proceedings and other actions relating to, arising out of or in connection with this Agreement" be submitted in New Jersey. ("West Decl. ISO Opp.," ECF No. 16-2 ¶ 7, Ex. 16.) The Court finds that the presence of a forum selection clause in the Agreement does not govern the Court's transfer inquiry as Plaintiff himself concedes that the Agreement does not encompass the claims at issue in this case. (Opp. at 22, 24–25); *see CyGate Software & Consulting, LLC v. Shukla*, No. 06-5136,

The presence of key witnesses, facts, and documents in the Southern District of Georgia, combined with the District of New Jersey's court congestion, weigh in favor of transfer, as it would make the trial easier, more expeditious, and less expensive, conserving judicial resources. *See Care One, LLC v. Nat'l Lab. Rels. Bd.*, No. 23-3221, 2023 WL 4156859, at *5 (D.N.J. June 23, 2023); *Interlink Prod. Int'l, Inc.*, 2020 WL 6707946, at *8; *see, e.g., Unbeatablesale.com, Inc. v. Meta Platforms, Inc.*, No. 22-6369, 2023 WL 4764813, at *3 (D.N.J. July 26, 2023) (transferring a civil action where it could easily be registered in either district but where New Jersey had a demonstrably higher caseload than the transferee district).[11]

Turning next to where the claim arose—generally, a claim arises in the forum containing the dispute's "center of gravity," that is, where the events and transactions central to the dispute occurred. *Allied Old Eng., Inc. v. Uwajimaya, Inc.*, No. 11-1239, 2012 WL 3564172, at *4 (D.N.J. Aug. 16, 2012). Given that Plaintiff is a Georgia resident and the events in question appear to have largely occurred in Georgia to a Georgia employee, Georgia appears to have a stronger local interest in this case than New Jersey and is the dispute's "center of gravity." *Id.*; *see also Optopics Lab'ys Corp. v. Nicholas*, 947 F. Supp. 817, 826 (D.N.J. 1996) (deferring to the venue best understood to be experiencing a "local controversy"). Additionally, it is worth noting that Plaintiff's physician and medical records are likely located in the Southern District of Georgia, rather than in New Jersey. *See Tennaro-Messina v. Marriott Int'l Inc.*, No. 23-20852, 2024 WL 3064895, at *4 (D.N.J. June 20, 2024).

---

2007 WL 9782942, at *3 (D.N.J. Jan. 5, 2007) (citing *Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1074–75 (3d Cir. 1997) ("To be enforceable, a forum selection clause must . . . govern the claims at issue.")).

[11] According to the National Judicial Caseload Profile, as of December 31, 2023, there were approximately 1,509 filings per judgeship in the District of New Jersey and approximately 476 filings per judgeship in the Southern District of Georgia. U.S. Dist. Cts., National Judicial Caseload Profile 15 (12.31.2023) (https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.pdf).

Finally, the Court turns to the familiarity of the trial judge with applicable state law. Given that Plaintiff's NJLAD claims remain live, this factor arguably weighs in favor of this case being heard in New Jersey, but it is nonetheless insufficient to defeat transfer. "[D]istrict courts are frequently called upon to interpret and apply the law of a state other than that in which they sit." *Bensalem Lodging Assocs., LLC v. Holiday Hosp. Franchising, LLC*, 575 F. Supp. 3d 532, 541 (E.D. Pa. 2021); *see also DiMarco v. Coates*, Civ. No. 19-1559, 2020 WL 5593767, at *3 (D.N.J. Sept. 18, 2020) ("[S]ince federal courts are generally well-equipped to apply the laws of other states and frequently do so in diversity cases, the Court finds that familiarity of the trial judge with applicable state law is a neutral factor in this instance.") (citation omitted)). While the district court in New Jersey may have additional experience with the NJLAD, that does not serve as a blanket basis for courts to reject transfer in all cases in which an NJLAD is brought. *See Booth v. Citizens Bank*, N.A., Civ. No. 22-5276, 2023 WL 3916275, at *6 (D.N.J. June 9, 2023) ("[T]he sixth factor is neutral because, although this Court may have more familiarity with the NJLAD, we have 'full faith in the judges of the District of [Rhode Island] to properly apply' it."); *Moore*, 2024 WL 1091689, at *6 (adjudicating a Washington resident's NJLAD claim in the Western District of Washington).

On balance, the public and private interest factors counsel transferring this action to the Southern District of Georgia. Accordingly, the Court **GRANTS** Defendant's motion to transfer.[12]

---

[12] Neither the Court's NJLAD analysis nor its transfer analysis reaches the question of whether New Jersey law should apply to Plaintiff's employment discrimination claims. The Court's transfer analysis should not be construed otherwise.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Transfer is **GRANTED**, and Plaintiff's Complaint shall be transferred to the United States District Court for the Southern District of Georgia. Defendant's Motion to Dismiss Plaintiff's NJLAD claims is **DENIED**.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: July 23, 2024